THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRED
P. THOMASULA, Appellant.

Fourth Department, June 22, 1990

### APPEARANCES OF COUNSEL

*William Kunstler* for appellant.

*Kevin M. Dillon, District Attorney (Roseanne Johnson* of counsel), for respondent.

### OPINION OF THE COURT

BALIO, J.

The issue before us is whether the reversal of defendant's conviction is required where the prosecution acquires the cooperation of a witness by entering into an unauthorized plea bargain and where the court refuses to inform the jury of the illegality of the bargain and that it may consider such illegality as affecting the witness' credibility. We hold that, in the circumstances of this case, defendant's conviction must be reversed and the matter remitted for a new trial.

### I

The defendant and Richard Pantano were indicted on two

counts of criminal sale of a controlled substance in the second degree, a class A-II felony, and four counts of criminal possession of a controlled substance in the third degree, a class B felony. These charges stemmed from the alleged sale of cocaine to an undercover officer on December 31, 1986, and February 17, 1987. Defendant additionally was charged with criminal sale of a controlled substance in the second degree to the same undercover officer on April 14, 1987.

After the indictment was filed on April 24, 1987, the People entered into a plea bargain with Pantano in exchange for his testimony against the defendant and his cooperation on other matters. Pantano was permitted, as part of the bargain, to waive prosecution by indictment upon his agreement to be prosecuted by a superior court information charging him with one count of attempted criminal sale of a controlled substance in the third degree, a class C felony. The court accepted the plea bargain in October 1987 and sentenced Pantano to a five-year probation term and a $1,000 fine.

Defendant was convicted, after a jury trial, of criminal sale and possession of a controlled substance arising from the alleged transaction of December 31, 1986, and also was convicted of criminal sale on February 17, 1987. He was acquitted, however, of the criminal possession charge relating to February 17, and of the criminal sale charge alleged to have transpired on April 14, 1987. At his trial, defendant moved to strike Pantano's testimony upon the ground that Pantano's plea bargain was unlawful. Defendant also submitted a written request that the jury be informed of the unlawful nature of the plea bargain and be instructed that it could consider the illegality as affecting the witness' credibility. The court denied both requests. On this appeal, defendant contends that prosecutorial misconduct in the use of testimony obtained by violating the constitutional and statutory law of this State contravened defendant's right to due process of law; that the court erred in refusing to instruct the jury on the unlawfulness of the plea bargain; and that admission of the testimony of Leonard Mattie, a police informant and prosecution witness, violated due process because defendant was a pretargeted suspect.

## II

█ The plea bargain with Pantano was improper in two respects. First, Pantano was permitted to waive prosecution by

indictment *after* the indictment was filed by the Grand Jury. The plain language of CPL 195.10 (2) (b), which implements the constitutional provision regarding Grand Jury indictments (NY Const, art I, § 6), authorizes a waiver before, but not after, the indictment has been filed *(People v Boston,* 75 NY2d 585; *see also, People v Banville,* 134 AD2d 116; *People v Sledge,* 90 AD2d 588, *lv denied* 58 NY2d 977). Second, by permitting the waiver of the indictment, the People and Pantano were able to avoid the statutory restrictions upon pleading to lesser offenses. CPL 220.10 (5) (a) (ii) provides that where, as here, an indictment charged a class A-II felony described in article 220 of the Penal Law, a plea of guilty must include at least a plea of guilty to a class B felony. Pantano wanted to avoid jail time and was willing to testify against defendant in order to do so. To avoid mandatory imprisonment or lifetime probation upon a conviction for a class B felony, Pantano agreed to plead guilty to a class C felony. The People, in implementing that bargain, subverted the clear legislative policy and intent embodied in CPL 220.10 *(see, People v Gardner,* 78 Misc 2d 744, 754). The bargain violated the statute *(see, People v Banville, supra; People v Cook,* 93 AD2d 942).

In the usual case, the trial court would recognize the illegality and either refuse to accept the plea or, at sentencing, vacate the plea *(see, Matter of Wadsworth v Mogavero,* 71 AD2d 157). The plea and sentence could be vacated on appeal *(see, People v Bartley,* 60 AD2d 283, *affd* 47 NY2d 965; *People v Hicks,* 79 AD2d 887). In this case, however, the trial court accepted the unauthorized bargain, and there was no appeal. More importantly, the Judge at defendant's trial, when apprised of the illegality, refused defendant's request to charge the jury that Pantano's testimony was obtained as the result of an unauthorized bargain. We now consider whether the court's failure to give the requested charge requires reversal.

### III

The existence of a promise of leniency or an inducement for the self-confessed criminal's cooperation clearly affects the jury's assessment of the witness' credibility. "[T]here is grave danger that, if he be weak or unscrupulous, he will not hesitate to incriminate others to further his own self-interest. * * * It requires no extended discussion * * * to establish that the existence of such a promise might be a strong factor

in the minds of the jurors in assessing the witness' credibility and in evaluating the worth of his testimony" *(People v Savvides,* 1 NY2d 554, 557). Obviously, the greater the inducement, the greater the potential for bias and furtherance of self-interest. Thus, the fact that the prosecution offered an inducement beyond that permitted by law in order to obtain the witness' cooperation also would be a strong factor in an assessment of credibility. A mere explanation of the terms of the agreement would not apprise the jury of the scope of the inducement. The unauthorized nature of the agreement is a matter beyond the ken of the ordinary juror.

These errors were not harmless. The government's case was not strong, and we are unable to say that there is no reasonable probability that the error did not contribute to defendant's conviction *(see, People v Crimmins,* 36 NY2d 230, 237; *see also, People v Vilardi,* 76 NY2d 67). Other than Pantano, the principal prosecution witnesses were Leonard Mattie and the undercover officer. Mattie, in exchange for leniency, fingered defendant as a possible suspect and set up the first transaction, mainly through contacts with Pantano, not the defendant. Also, Mattie was not present at the February 17 transaction. The undercover officer's testimony presented its own credibility problems, and a defense expert testified that numerous tape recordings of conversations before, during and after the transactions, including tapes of conversations during the December 31 and February 17 transactions, had been edited, partially erased, and tampered with. The testimony of Richard Pantano, a life-long friend of the defendant, was critical to the prosecution's case. That testimony was acquired by the promise of an unlawful plea bargain, and the jury was deprived of information essential to its assessment of his credibility. We find that these errors were not harmless beyond a reasonable doubt.

In sum, we hold that the court erred as a matter of law in refusing defendant's timely request that the jury be instructed that the plea bargain was unlawful *(see, People v Vann,* 54 AD2d 356). The instruction requested by the defense was correct, supported by the evidence, "and we perceive no valid reason for its denial" *(People v Griswold,* 58 NY2d 633, 635).

## IV

■ Finally, we reject defendant's contention that his due process rights were violated because the agreement with

Leonard Mattie constituted an unlawful contingent fee arrangement. Although many courts have recognized that due process is offended where an informant's compensation is contingent upon the successful prosecution or conviction of a pretargeted suspect *(see, for example, People v Godley,* 130 AD2d 791, *lv denied* 70 NY2d 750; *United States v Cuomo,* 479 F2d 688, *cert denied sub nom. Rizzo v United States,* 414 US 1002; *United States v Smalls,* 363 F2d 417, *cert denied* 385 US 1027; *Williamson v United States,* 311 F2d 441, *following retrial* 340 F2d 612, *cert denied* 381 US 950; *United States v Persico,* 646 F Supp 752), the defendant was not a pretargeted suspect. In this case, the contingent agreement was made before defendant was implicated. The informer agreed to produce one or more defendants and the extent of his compensation was dependent upon output. Neither the police nor the prosecution named any targets; it was the informer who suggested that Thomasula be a target. Thus, it cannot be said that defendant was *pretargeted (compare, Williamson v United States, supra).*

Accordingly, the judgment must be reversed, and a new trial granted.

CALLAHAN, J. P., DOERR, BOOMER and GREEN, JJ., concur.

Judgment unanimously reversed, on the law, and matter remitted to Supreme Court, Erie County, for a new trial.